A. SCHWOERER & SONS, Inc., v. STONE.

(Supreme Court, Appellate Division, First Department. March 5, 1909.)

FRAUDS, STATUTE OF (§ 33*)—PAYMENT OF DEBT OF ANOTHER.

A subcontractor refused to begin work under its contract because of the financial difficulties of the principal contractor, a corporation. A third person, who was interested in a corporation foreclosing a mortgage on the building, and who in fact constituted substantially the principal contractor, orally promised to pay the subcontractor if it would go ahead with the work which it did. *Held*, that the promise of the third person was an original promise founded on a new consideration, and was enforceable notwithstanding the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50, 53, 56; Dec. Dig. § 33.*]

Ingraham and Scott, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the A. Schwoerer & Sons, Incorporated, against Samuel H. Stone. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Bertram L. Kraus, for appellant.
Benjamin F. Feiner, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

McLAUGHLIN, J.   This action was brought to recover the sum of $1,650 and interest thereon for labor performed and materials furnished on a building which was being constructed by the Wolff Construction Company—the complaint alleging that the plaintiff had a contract with it to perform work and furnish materials in and about the roof; but before any of the work was performed or any of the materials furnished, the construction company became financially embarrassed, and the plaintiff refused to proceed under its contract. Thereafter, at the request of the defendant, who was interested in the completion of the building, and upon his promise to pay the plaintiff, the work and materials in question were performed and furnished. The answer denied the material allegations of the complaint, and alleged as an affirmative defense that the promise, if made, was oral, was to answer for the debt or default of another, and void under the statute of frauds.   The complaint was dismissed at the close of plaintiff's case, and it appeals.

At the trial only one witness was sworn, Schwoerer, the treasurer and active manager of the plaintiff, from whose testimony it appears: That the plaintiff entered into a contract with the Wolff Construction Company, the main contractor, to do certain work and furnish certain materials on the building.   That, before the plaintiff entered upon the performance of the contract, the construction company became financially embarrassed, and plaintiff refused to perform its contract.   That thereupon the defendant sent for Schwoerer, and asked him what plaintiff proposed to do about carrying out the contract, and he informed defendant that plaintiff was not going to carry it out because the construction company was financially embarrassed.   That the plaintiff had a judgment against it for $600 or $700 which it had been unable to collect.   That there were liens against the building, and that the Mannados Realty Company, in which the defendant was interested and of which he was treasurer, had commenced an action to foreclose a mortgage which it held.   Thereupon the defendant asked Schwoerer how much the plaintiff would reduce the contract, and go on and finish it under the supervision of a Mr. Roach, whom the defendant said he had made president of the Wolff Construction Company in place of its former president; that Schwoerer replied he already had a contract with the Wolff Construction Company, and there was no need of reducing the price to make a new one with them.   That defendant then suggested that the contract be made with the Mannados Realty Company, and this proposition was rejected by Schwoerer and the defendant then said, "Supposing I agree to pay you for the work, how much will you take off?"   And Schwoerer replied, "If you agree to pay for the work, I will make the price $2,750" (the original price was $3,000).   That defendant then took the contract and made an indorsement upon it to the effect that the price was reduced to $2,750, and then said to Schwoerer: "Now you go up and see Mr. Roach, and let Mr. Roach prepare contracts to-morrow or the next day for $2,750."   That Schwoerer called upon Roach and certain revisions were made which still further reduced the price to $2,250, and a new contract was then prepared between plaintiff and the Wolff Construction Company, but no provision was made for the

terms of payment, except that "payments to be arranged within the next 48 hours, satisfactory to both parties"; Roach saying the arrangement would have to be made with the defendant. That Schwoerer then took the contract to the defendant, who said he would pay "as soon as I wanted any money, to try to get $1,000 worth of work done" before asking for a payment. That Schwoerer then stated that the plaintiff would not do the work under the contract, and asked if defendant would not give him a letter, which he refused to do because he stated he was interested in the loan made by the Mannados Realty Company, and, if he did, then the other mechanics on the building would come and want their payments on the building guaranteed in that way, and he did not propose to pay them; but he said:

"Go ahead, and I will see that you get your money. I will pay you for everything you do on that job. * * * I will tell you I will give you payments as you progress; but don't make them any less than $1,000."

That the plaintiff thereupon furnished the materials, and performed the labor called for by the contract. That, during the progress of the work, Schwoerer asked Stone for a payment on the contract of $600, and the defendant said he would send over a check for that amount, which he did. That the check was made by the Mannados Realty Company by S. H. Stone, treasurer, payable to the order of Wolff Construction Company "for Schwoerer & Sons," indorsed by the construction company and then delivered. That shortly after this the work was completed and plaintiff asked Stone for final payment. That he made some complaint about the work, and said, if that were remedied, then he would pay. That the changes were made as suggested and another request made for payment, and defendant replied, "You come in here in a week or 10 days," and I will pay you. That he thereafter refused to make any further payments, and this action was brought. The testimony of the witness Schwoerer to the effect that the defendant personally promised to pay the plaintiff was corroborated by the affidavit of Roach, which was put in evidence without objection.

Upon this state of facts I think the plaintiff made a prima facie case which entitled it to recover. It is fairly to be inferred from Schwoerer's testimony that the defendant not only was interested in the Mannados Realty Company, which was foreclosing the mortgage upon the building, but that he, in fact, constituted substantially the Wolff Construction Company. He stated that he had removed Wolff from the construction company, and put Roach, his superintendent, in his place. The promise sought to be enforced related to the indebtedness thereafter to be created. It was an original promise, founded upon a new consideration, which was work thereafter to be performed and materials thereafter to be furnished. Raabe v. Squier, 148 N. Y. 81, 42 N. E. 516; Reisler v. Silbermintz, 99 App. Div. 131, 90 N. Y. Supp. 967. It was beneficial to the promisor by reason of his interest in the Wolff Construction Company or the Mannados Realty Company, or both. Thus the case is brought within the rule laid down in White v. Rintoul, 108 N. Y. 222, 15 N. E. 318, in which the court said:

"Where the primary debt subsists and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment irrespective of the liability of the principal debtor."

The judgment appealed from should be reversed and a new trial ordered, with costs to appellant to abide event.

CLARKE and HOUGHTON, JJ., concur.

INGRAHAM, J. (dissenting). So far as appears from this record, the defendant had no personal interest in the performance of this contract. He appears to have been an officer of a corporation who had a mortgage upon the property that was being improved; but the record certainly shows no personal interest which would be benefited by the performance of the plaintiff's contract. The plaintiff, having a contract with a contractor to erect a building upon the premises described, who was in financial difficulties, had refused to carry out his contract. He saw the defendant, stated his position, and the defendant asked him what he would do the work for if the defendant promised to pay the amount due. According to the plaintiff's testimony, an agreement was then arrived at, by which the defendant would pay the amount of a new contract to be made with the original contractor. Subsequently a new contract was made, not between the plaintiff and the defendant, but between the plaintiff and the original contractor, which contained no reference to the defendant, and under which the plaintiff furnished the materials and performed the work that he had undertaken to do. I think that all prior negotiations were merged in this new contract when it was executed. The only question presented is whether, subsequent to the execution of the new contract, there was any agreement with the defendant to pay the amount due to the plaintiff which was enforceable. After this second contract was made, the date of which was the 28th of March, 1905, the plaintiff testified that he saw the defendant and showed him the contract, and stated that the plaintiff had reduced the price $500 for the omission of a stone cornice; that defendant said he would pay plaintiffs as soon as they wanted any money, to try to make the payments not less than $1,000; that plaintiff then told the defendant that he would not work under this contract, and asked the defendant to give a letter in writing; that defendant said that he could not do that, because he was interested in the loan, and, if he did that, the other mechanics on the building would come and want their payments in that way and he did not propose to pay them; that defendant then said, "Go ahead, and I will see that you get your money." He said, "I will pay you for everything you do on that job." Here a contract had been made with the Wolff Construction Company to do the work, by which the Wolff Construction Company agreed to pay to the plaintiff the sum of $2,250, and that such sum shall be paid in current funds by the Wolff Construction Company to the plaintiff as specified. This was an absolute obligation of the Wolff Construction Company which was in existence when the plaintiff went to the defendant, and the defendant said he would pay the

plaintiff as soon as the plaintiff wanted any money; that he would pay the plaintiff for everything the plaintiff did on that job. It seems to me that this is clearly to answer for the debt of the Wolff Construction Company, and not an original contract made by the defendant to pay for the work done by the plaintiff upon this building. The courts have often gone far to prevent injustice where the owner of real property vitally interested in completing a building in course of construction had made an independent contract to pay a person furnishing labor and materials for the building. In this case, however, where a contract has just been made and no work performed, and the only agreement was to pay to a contractor the amount of his contract by a person who was not proved to have any beneficial interest in the property, I do not think that it can be said to be an original contract, but must be construed to be a promise to answer for the debt or obligation of the Wolff Construction Company, and thus within the statute of frauds.

In the case of Raabe v. Squier, 148 N. Y. 81, 42 N. E. 516, it was held that the statute of frauds was not applicable to the contract there under consideration, and the reasons given were because "the promise, in so far as it is here sought to be enforced, related to the indebtedness thereafter to be created. The promisors were the owners of the buildings in process of construction. The woodwork furnished by the plaintiffs was for their benefit. The contractors had neglected to pay the plaintiffs for the material furnished and they refused to deliver more, as they had the right to do. Under such circumstances, the promise was made, and it was in reliance upon the promise that the plaintiffs delivered the rest of the woodwork. The promise thus made was original and founded upon a new consideration, that of the goods. It was beneficial, as we have seen, to the promisors." In Reisler v. Silbermintz, 99 App. Div. 131, 90 N. Y. Supp. 967, the promisor was the owner of the building and the contract that was made was for alterations in it. In both these cases, which have sustained as on an original promise, the promisor was beneficially interested in the performance of the contract, and stress in both cases is laid upon that condition. To make such a promise original, it seems to me there must be a new consideration which was beneficial to the promisor and in addition to what the promisee was bound to perform by reason of his original contract. Here the plaintiff had entered into a contract with the Wolff Construction Company. The Wolff Construction Company had not in any way violated its contract, and the plaintiff was under legal obligation to perform that contract. He went to the defendant with that contract, and the defendant agreed to pay him for the materials and that he furnished under it. In both Raabe v. Squier, supra, and Reisler v. Silbermintz, supra, the original contractors had failed to perform their contract, and thus the promisee was absolved from carrying it out. Under these circumstances, he went to the owner of the building who was beneficially interested in having the work performed and the owner of the building to secure that benefit, promised that what was furnished in future he would pay for, making a new and independent contract to furnish work and materials for his, the promisor's, ben-

efit. / In this case, however, the plaintiff had a contract with the Wolff Construction Company which he was bound to perform. Nothing had happened to discharge him from his obligation to the Wolff Construction Company, and whatever promise the defendant made was simply to pay what the Wolff Construction Company had agreed to pay and for what the plaintiff had agreed to perform upon the promise of the Wolff Construction Company to pay. It seems to me that a contract made under such circumstances cannot in any sense be said to be a new or original contract. It was not beneficial to the defendant, and it lacked the essential elements, namely, a beneficial interest of the promisor in the performance of the contract and furnishing the labor and materials on the new promise, which but for that he was under no obligation to furnish, which are necessary to establish a new and independent contract.

I think, therefore, that the judgment was right and should be affirmed.

SCOTT, J., concurs.